# CHARLESTON,

NEW MARTINSVILLE BANK *et al. v.* ALEX HART *et al.*
FARMERS AND PRODUCERS NATIONAL BANK *et al. v.*
JASON HART *et al.*
(Consolidated)

(No. 5727)

Submitted January 18, 1927. Decided March 1, 1927.

PRINCIPAL AND SURETY—*Security Given by Principal Debtor for Indemnity of Surety May be Applied in Equity to Debt on Insolvency of Debtor and Surety.*

Security given by the principal debtor for the personal indemnity of his surety may be applied in equity to payment of the debt, where both debtor and surety have become insolvent.

(Principal and Surety, 32 Cyc. p. 146.)

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Appeal from Circuit Court, Wetzel County.

Suits by the New Martinsville Bank and others against Alex Hart and others, and by the Farmers' & Producers' National Bank and others, consolidated. From an adverse ruling Minnie Morgan, executrix of I. M. Morgan, deceased, and another, appeal.

*Reversed and remanded.*

*Brown & McIntire,* for appellants.
*Warren F. Morris,* amicus curiae.

LITZ, JUDGE:

The above entitled causes were instituted (the first in 1915, and the second in 1917) for the purpose of subjecting the lands of the defendants John Hart, Alex Hart and Jason Hart to the payment of their debts.

April 1, 1908, Alex Hart and Jason Hart, as joint makers, executed a promissory note payable to the order of I. D. Morgan at First National Bank of New Martinsville, New Martinsville, West Virginia, four months from date, for $5,000.00; Jason Hart having signed the instrument for the accommodation of Alex Hart. By deed dated April 28, 1908, Alex Hart and wife conveyed to John Hart, Trustee, inter alia, Lot No. 100 in Martins Addition to the town of New Martinsville, in trust to secure Jason Hart "and hold him harmless as security for the said Alex Hart upon" said note, or any renewal thereof in whole or in part. Pending this litigation Nettie B. Porter acquired the interest of Alex Hart in said real estate.

Alex Hart and Jason Hart having become insolvent, Minnie Morgan and L. E. Morgan, personal representatives of I. D. Morgan (now deceased), claim the benefit of the deed of trust for the payment of the note, which was denied them by the circuit court.

This appeal, prosecuted by the said personal representatives of I. M. Morgan, deceased, presents the sole question of whether a creditor is entitled to the benefit of securities given by the principal debtor to indemnify the surety. It would

seem to be the general rule that securities given by the debtor for the protection of his surety, although not made expressly subject to the payment of the debt, are available in equity to the creditor. L. R. A. 1916-C 1062; 6 Ann. Cas. 395; 37 Cyc. 437; *Morrill* v. *Morrill,* 53 Vt. 74; *Nourse* v. *Weitz,* (Iowa) 95 N. W. 351; *Swift* v. *Kortrecht,* 112 Fed. 709, 50 C. C. A. 429; *Harlin Co.* v. *Whitney,* (Neb.) 90 N. W. 993; *Van Orden* v. *Durham,* 35 Cal. 136; *First National Bank of Newport* v. *Hunton,* 70 N. H. 224.

"It must be admitted that the general rule is that where one is surety for the principal debtor and the surety takes a security from the principal debtor, such as a mortgage, for the purpose of indemnifying and saving harmless the surety, that this security does inure to the benefit of the creditor whose debt must be paid before the surety can have any benefit therefrom". *Sherrod* v. *Dixon,* 120 N. C. 60, 63.

"Where securities have been given by the principal to a surety to indemnify him against loss, the creditor is said to be subrogated to the rights of the surety in the securities". Pomeroy's Equity Juris., sec. 352. The same rule is stated in Sec. 716 of Storey's Equity Jurisprudence. In 21 R. C. L. 1094 it is said to be very generally held that a creditor, in case of the default of his debtor, is entitled to avail himself of any securities placed by the principal in the hands of his surety for its payment, *or for his indemnity against its payment,* whether the surety has been damnified or not, and irrespective of the question whether the surety or principal, either or both, are insolvent.

"As a general rule a creditor is entitled in equity to the benefit of all collateral securities which the debtor has given to his sureties or to persons standing in the situation of sureties; though there are some authorities which hold that this rule does not apply to securities which are given for the sole purpose of indemnifying the surety, and not for the purpose of creating a security for the debt, or of providing means for its payment." A. & E. Enc. L., 2d ed., Vol. 27, p. 233.

In *Hampton* v. *Phipps,* 108 U. S. 260, it is said:

"The application of the principle of subroga-
tion in favor of creditors and of sureties, has un-
doubtedly been frequent in the courts of equity in
England and the United States, and is an ancient
and familiar head of their jurisdiction.

"It was distinctly stated, as to creditors, in the
early case of *Maure* v. *Harrison*, 1 Eq. Ca. Abr. 93,
where the whole report is as follows:

" 'A bond creditor shall, in this court, have the
benefit of all counter-bonds or collateral security
given by the principal to the surety; as if A owes
B money, and he and C are bound for it, A gives
C a mortgage or bond to indemnify him, B shall
have the benefit of all the securities the principal
gives to the creditor.' * * *

"It is, in fact, a natural and necessary equity
which flows from the relation of the parties, and
though not the result of contract, is nevertheless
the execution of their intentions. For when a
debtor, who has given personal guaranties for the
performance of his obligation, has further secured
it by a pledge in the hands of his creditor, or an
indemnity in those of his surety, it is conform-
able to the presumed intent of all the parties to the
arrangement, that the fund so appropriated shall
be administered as a trust for all the purposes,
which a payment of the debt will accomplish; and
a court of equity accordingly will give to it this
effect."

The decisions in some of the States, notably those of Miss-
issippi, hold that the creditor will not ordinarily be entitled
to the benefit of securities given by the principal debtor to
indemnify the surety unless they are also made subject to
the payment of the debt. *Pool* v. *Dos]er*, 59 Miss. 258, ac-
cordingly, announces: "The rule deducible from our de-
cisions is that to make a security available to the creditor
it must be expressed to be for the security of the debt, and
to be enforcible for its payment; or otherwise, it will not be
held to be enforcible in behalf of the creditor, and even if
the security is conditioned for the payment of the debt, but
stipulates for its enforcement in a specified contingency, it

will be held to be a mere indemnity to the surety and only enforcible as such according to its terms. Whether these decisions are right or wrong is not the question. They are unmistakable in their effect, and have been long acquiesced in. They are not in harmony with many cases in other States, and may not be defensible on the principle of the doctrine of the right of the creditor to be substituted to all of the securities held by the surety, but they furnish the rule in this State''.

Most, if not all, of the courts adhering to the Mississippi doctrine, however, recognize an exception in cases where the debtor is insolvent, or where both the debtor and surety are insolvent. We quote from *Dyer* v. *Jacoway*, 76 Ark. 171, 6 Ann. Cas. 393, as representative of the class of cases announcing this exception:

> ''There seems to be a distinction between those conveyances made by a principal to a surety both for the purpose of protecting him and to secure the payment of the debt and those executed merely to indemnify the sureties against liability. If the conveyances are made to the surety for the purpose of securing the payment of the debt, the creditor has an interest therein which the surety cannot destroy. But if the conveyance to the surety is only to indemnify him, then such security does not, in the first instance, attach to the debt, and whatever equity may arise in favor of the creditor with regard to the security arises afterwards, and in consequence of the insolvency of the parties principally liable for the debt. Until this equity arises, the surety has a right in equity as well as at law to release the security. Even after such insolvency the mortgagee may surrender the security, if he does it in good faith, and before any claim is made upon him for it. The application of it for the benefit of third persons can only be accomplished by the interposition of a court of equity, and in case the mortgagee still claims the security, or when he has conveyed it under circumstances tending to show bad faith or collusion between him and the mortgagor.''

The debtor and the surety both being insolvent in this case, we are of opinion that the estate of the creditor is entitled to the benefit of the deed of trust in question. The ruling of the circuit court will therefore be reversed and the cause remanded.

*Reversed and remanded.*